IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

EQUAL EMPLOYMENT OPPORTUNITY : 
COMMISSION, :
 :
    Plaintiff, :  CIVIL ACTION NO.
 :
   v. :
 :  JURY TRIAL DEMAND
GLOBAL MEDICAL RESPONSE, INC., :
AMERICAN MEDICAL RESPONSE, INC., :
AMERICAN PATHWAYS, INC. (DE), :
PROVIDACARE, LLC (TX), AMERICAN :
MEDICAL RESPONSE AMBULANCE SERVICE,:
INC., AMERICAN MEDICAL RESPONSE OF :
SOUTHERN CALIFORNIA (CA), HEMET :
VALLEY AMUBLANCE SERVICE, INC. (CA), :
HERE ENTERPRISES, INC. (CA), JJDAC, LLC :
(DE) d/b/a MEDSTAR AMBULANCE, :
LIFECARE AMBULANCE SERVICE, INC., :
MEDIC ONE OF COBB, INC. (GA), MERCY, :
INC. (NV), AMERICAN INVESTMENT :
ENTERPRISES, INC. (NV), MERCY LIFE CARE :
(CA), PUCKETT AMBULANCE SERVICE, INC. :
(GA), TEK AMBULANCE SERVICE, INC. f/k/a :
TEK, INC. (IL), AMERICAN MEDICAL :
RESPONSE MANAGEMENT, INC. (DE), :
REGIONAL EMERGENCY SERVICES, LP (DE), :
A-1 LEASING, INC. (FL), RESCUE CARE, INC. :
(FL), AMERICAN MEDICAL RESPONSE MID- :
ATLANTIC, INC. (PA), AMERICAN MEDICAL :
RESPONSE DELAWARE VALLEY, LLC (DE), :
AMERICAN MEDICAL RESPONSE OF :
COLORADO, INC. (DE), INTERNATIONAL :
LIFE SUPPORT, INC. (DE), AMERICAN :
MEDICAL RESPONSE OF GEORGIA, INC. (DE),:
TROUP COUNTY EMERGENCY MEDICAL :
SERVICES, INC. (GA), AMERICAN MEDICAL :
RESPONSE OF INLAND EMPIRE (CA), :
DESERT VALLEY MEDICAL TRANSPORT, :
INC. (CA), AMERICAN MEDICAL RESPONSE :
OF MASSACHUSETTS, INC. (MA), AMR :
BROCKTON, LLC (DE), AMERICAN MEDICAL :

1

RESPONSE WEST (CA), METROPOLITAN :
AMBULANCE SERVICE (CA), AMR :
BAYSTATE, LLC (DE), COMMUNITY EMS, :
INC. (DE), EMERGENCY MEDICAL :
TRANSPORTATION, INC. (MA), MARLBORO :
HUDSON AMBULANCE & WHEELCHAIR :
SERVICE, INC. (MA), VITAL ENTERPRISES, :
INC. (MA), AMR OF CENTRAL TEXAS I, LLC :
(DE), AMR OF CENTRAL TEXAS II, LLC (DE), :
METROCARE SERVICES-ABILENE, L.P. (TX), :
ATLANTIC AMBULANCE SERVICES :
ACQUISTION, INC. (DE), MEDICS :
SUBSCRIPTION SERVICES, INC. (FL), GILA :
HOLDCO, LLC (DE), COMMUNITY AUTO :
AND FLEET SERVICES, LLC (DE), :
COMTRANS, INC. (DE), COMTRANS OF :
OREGON, LLC (DE), GRACE BEHAVIORAL :
HEALTH, LLC (DE), SSAG, LLC (DE), GMR :
INTERNATIONAL, INC. (DE), HANK'S :
ACQUISITION CORP (DE), MEDLIFE :
EMERGENCY MEDICAL SERVICE, INC. (AL), :
FOUNTAIN AMBULANCE SERVICE, INC. (AL),:
MEDI-CAR SYSTEMICS, INC. (FL), MEDI-CAR :
AMBULANCE SERVICE, INC. (FL), MISSION :
CARE SERVICES, LLC (MO), :
TRANSPORTATION MANAGEMENT :
SERVICES OF BREVARD, INC. (FL), TMS :
MANAGEMENT GROUP, INC. (FL), GREATER :
PINELLAS TRANSPORTATION :
MANAGEMENT SERVICES, INC. (FL), :
ACCESS2CARE, LLC (MO), MISSION CARE OF:
ILLINOIS, LLC (IL), MISSION CARE OF :
MISSOURI, LLC (MO), ABBOTT AMBULANCE,:
INC. (MO), NEVADA RED ROCK HOLDINGS, :
INC. (DE), NEVADA RED ROCK AMBULANCE,:
INC. (DE), MEDICWEST HOLDINGS, INC. (DE),:
MEDICWEST AMBULANCE, INC. (NV), :
PARAMED, INC. (MI), MERCY AMBULANCE :
OF EVANSVILLE, INC. (IN), TIDEWATER :
AMBULANCE SERVICE, INC. (VA), RANDLE :
EASTERN AMBULANCE SERVICE, INC. (FL), :
MEDICS AMBULANCE SERVICE (DADE), INC.:
(FL), SEAWALL ACQUISITION, LLC (DE), VIP :
PROFESSIONAL SERVICES, INC. (CA), GOLD :

COAST AMBULANCE (CA), SPRINGS          :
AMBULANCE SERVICE, INC. (CA), BLYTHE   :
AMBULANCE SERVICE (CA), ADAM           :
TRANSPORTATION SERVICE, INC. (NY), AIR :
AMBULANCE SPECIALISTS, INC. (CO),      :
ALLIANCE AMBULANCE OF ARIZONA, LLC     :
(DE), AMBULANCE ACQUISITION, INC. (DE), :
AMERICAN MEDICAL RESPONSE HOLDINGS,:
INC. (DE), AMERICAN MEDICAL RESPONSE   :
HPPP, LLC (DE), AMERICAN MEDICAL       :
RESPONSE NORTHWEST, INC. (OR),         :
AMERICAN MEDICAL RESPONSE OF           :
COCHISE COUNTY, LLC (DE), AMERICAN     :
MEDICAL RESPONSE OF CONNECTICUT,       :
INC. (CT), AMERICAN MEDICAL RESPONSE   :
OF ILLINOIS, INC. (DE), AMERICAN MEDICAL:
RESPONSE OF MARICOPA, LLC (DE),        :
AMERICAN MEDICAL RESPONSE OF NEW       :
YORK, LLC (NY), AMERICAN MEDICAL       :
RESPONSE OF NORTH CAROLINA, INC. (DE), :
AMERICAN MEDICAL RESPONSE OF           :
OKLAHOMA, INC. (DE), AMERICAN          :
MEDICAL RESPONSE OF PIMA, LLC (DE),    :
AMERICAN MEDICAL RESPONSE OF SOUTH     :
CAROLINA, INC. (DE), AMERICAN MEDICAL  :
RESPONSE OF TENNESSEE, INC. (DE),      :
AMERICAN MEDICAL RESPONSE OF TEXAS, :
INC. (DE), AMR ALL-TRANSIT LLC (DE),   :
AMR-LGA OF TENNESSEE, LLC (DE),        :
ASSOCIATE AMBULANCE SERVICE, INC.      :
(NY), ATLANTIC/KEY WEST AMBULANCE,     :
INC. (DE), ATLANTIC/PALM BEACH         :
AMBULANCE, INC. (DE), BROWARD          :
AMBULANCE, INC. (DE), EMS OFFSHORE     :
MEDICAL SERVICES, LLC (DE), FIVE       :
COUNTIES AMBULANCE SERVICE, INC.       :
(NY), FLORIDA EMERGENCY PARTNERS,      :
INC. (TX), GMR EVENT SERVICES, LLC (DE), :
GUARDIAN CRITICAL CARE SERVICES, LLC   :
(IL), KURTZ AMBULANCE SERVICE, INC.    :
(WI), KURTZ INDUSTRIAL FIRE SERVICES,  :
INC. (IL), KURTZ MUNICIPAL DISPATCHING :
SERVICES, INC. (IL), KURTZ PARAMEDIC   :
SERVICE, INC. (IL), KURTZ SPECIAL EVENTS :

SERVICES, INC. (IL), KUTZ AMBULANCE          :
SERVICE, INC. (WI), LIFE GUARD               :
INTERNATIONAL, INC. (NV), LIFE LINE          :
AMBULANCE SERVICE, INC. (AZ),                :
LIFEFLEET SOUTHEAST, INC. (FL),              :
MEDEVAC MEDICAL RESPONSE, INC. (MO),  :
MEDEVAC MIDAMERICA, INC. (MO), MEDIC  :
ONE AMBULANCE SERVICES, INC. (DE),           :
MEDICS AMBULANCE, INC. (FL), MEDICS          :
AMBULANCE SERVICE, INC. (FL), MEDICS         :
EMERGENCY SERVICES OF PALM BEACH             :
COUNTY, INC. (FL), MEDICS TRANSPORT          :
SERVICES, INC. (FL), MEDSTAT EMS, INC.        :
(MS), METRO AMBULANCE SERVICE                :
(RURAL), INC. (DE), METRO AMBULANCE          :
SERVICE, INC. (DE), METRO AMBULANCE          :
SERVICE, INC. (GA), MIDWEST AMBULANCE :
MANAGEMENT COMPANY (DE), MOBILE              :
MEDIC AMBULANCE SERVICE, INC. (DE),          :
PARK AMBULANCE SERVICE, INC. (NY),           :
PHYSICIANS & SURGEONS AMBULANCE              :
SERVICES, INC. (OH), RIVER MEDICAL           :
INCORPORATED (AZ), SAN DIEGO 911 LLC         :
(DE), SEMINOLE COUNTY AMBULANCE, INC.:
(DE), STAT HEALTHCARE, INC. (DE),            :
SUNRISE HANDICAP TRANSPORT CORP.             :
(NY), VIRGINIA MEDICAL TRANSPORT,            :
LLC (DE), AND WESTMED AMBULANCE,             :
INC. (CA)                                    :
                                             :
            Defendants.                      :
_____      :

## **COMPLAINT**

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII"),  Title I of

the Civil Rights Act of 1991, and Title I of the Americans with Disabilities Act of 1990, as

amended ("ADA") to correct unlawful employment practices on the basis of religion and

disability and to provide appropriate relief to Ravinder Singh ("Singh"), James E. Richard

("Richard"), Menachem Mendel Abramowitz ("Abramowitz"), Robert Glaspy ("Glaspy"),

Jamaal Bryant ("Bryant"), Derek E. Allen ("Allen"), Jesus Fequiere ("Fequiere") and a class of similarly-situated applicants and employees who were adversely affected by such practices. The Equal Employment Opportunity Commission ("EEOC") alleges that Global Medical Response, Inc. ("GMR"), American Medical Response, Inc. ("AMR"), and AMR's 134 subsidiaries (the "Subsidiaries") (collectively, "Defendants") engaged in intentional discrimination against Singh, Richard, Abramowitz, Glaspy, Bryant and a class of similarly-situated applicants and employees when it failed to hire them, discharged them, retaliated against them, and/or failed to accommodate their sincerely-held religious beliefs in violation of Title VII, and engaged in intentional discrimination against Bryant, Allen, Fequiere, and a class of similarly-situated applicants and employees when it failed to hire them, discharged them, and/or failed to accommodate their disabilities in violation of the ADA.

## **JURISDICTION AND VENUE**

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII, 42 U.S.C. 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. This action is also authorized and instituted pursuant to Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3), of Title VII, 42 U.S.C. 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado and throughout the United States.

## PARTIES

3.     The EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.     The EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

5.     At all relevant times, GMR has continuously been a corporation doing business in the state of Colorado and has continuously had at least 15 employees.

6.     At all relevant times, GMR has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h) and Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(5), (7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

7.     At all relevant times, AMR has continuously been a corporation doing business in the state of Colorado and has continuously had at least 15 employees.

8.     At all relevant times, AMR has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h) and Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(5), (7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

9.      At all relevant times, each of the Subsidiaries have continuously been corporations with their principal places of business in the state of Colorado and have continuously had at least 15 employees.

10.     At all relevant times, the Subsidiaries have continuously been employers engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h) and Section 101(5) of the ADA, 42 U.S.C. § 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(5), (7), which incorporate by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. § 2000e(g) and (h).

11.     GMR is the 100% owner of AMR Holdco, Inc., which is the 100% owner of American Medical Response, Inc., which is the 100% owner of the Subsidiaries.

12.     The policies and procedures for complying with AMR's and the Subsidiaries' obligations under the ADA and Title VII are set at a corporate level by GMR's Chief Human Resources Officer and its Associate General Counsel – Labor & Employment.

13.      GMR has a "no facial hair" policy (the "No Facial Hair Policy") for Emergency Medical Technicians ("EMTs") and Paramedics  that it applies to AMR and the Subsidiaries and requires them to follow. Any exceptions to the "No Facial Hair Policy" must be approved by GMR's National Leader for Safety and Risk Management, which means the Subsidiaries cannot independently alter the "No Facial Hair Policy".

14.     GMR's and AMR's management were directly involved in at least three of the accommodation decisions at issue in this lawsuit. GMR's Director of Risk and Safety communicated the decision to deny Singh's religious accommodation request to Singh. GMR's Human Resources Manager, Southeast Region, signed the letter denying Richard's request for a

religious accommodation. AMR's Regional Director was involved with denying the reasonable accommodation requested by Fequiere.

15.     There are also significant operational connections between GMR, AMR, and the Subsidiaries. AMR maintains one website for itself and all the Subsidiaries.[1] This website takes the person who accesses it to a homepage for the Subsidiary in the location from which it is accessed. For example, if a user accesses the website from Atlanta, Georgia, the homepage will show information for North Fulton County AMR. If the user accesses the website from Buffalo, New York, it will show the homepage for Western New York AMR.

16.     GMR orders and pays for all of the respirators for the Subsidiaries and pays for and maintains liability insurance for itself and the Subsidiaries through ACE American.

17.     Both GMR and AMR list their principal place of business as 6363 S. Fiddler's Green Circle, Suite 1400, Greenwood Village, CO 80111. The lists of national leaders on GMR's and AMR's websites show a significant number of common officers and leaders between the two entities:

| American Medical Response, Inc. | Global Medical Response, Inc. |
|---|---|
| | Randal G. Owen, President and CEO |
| **Edward Van Horne**<br>President & Chief Executive Officer | **Edward Van Horne**<br>Chief Operating Officer |
| **Edward M. Racht, MD**<br>**Chief Medical Officer** | **Edward M. Racht, MD**<br>**Chief Medical Officer** |
| **Jeffery McCollom**<br>**Senior Vice President,**<br>**Business Development**<br>**Global Medical Response** | **Jeffery McCollom**<br>**Senior Vice President,**<br>**Business Development**<br>**Global Medical Response** |

18.     There are also common and shared officers between GMR, AMR, and a sample of some of the Subsidiaries:

---

[1] See www.amr.net

8

| Name | CEO | CFO | Secretary | Principal Place of Business |
|------|-----|-----|-----------|------------------------------|
| Global Medical Response, Inc. | **Randel G. Owen** | **Michael Preissler** | **Thomas AA Cook** | 6363 S. Fiddler's Green Cir, Greenwood Village, CO |
| American Medical Response, Inc. | **Randel G. Owen** | **Michael Preissler** | **Thomas AA Cook** | 6363 S. Fiddler's Green Cir, Greenwood Village, CO |
| American Medical Response of Connecticut, Inc. | **Randel G. Owen** | **Michael Preissler** | **Thomas AA Cook** | 6363 S. Fiddler's Green Cir, Greenwood Village, CO |
| Metro Ambulance Service, Inc. (GA) | **Randel G. Owen** | **Michael Preissler** | **Thomas AA Cook** | 6200 S. Syracuse Way, Greenwood Village, CO |
| Medic One of Cobb, Inc. | **Randel G. Owen** | **Michael Preissler** | **Thomas AA Cook** | 6363 S. Fiddler's Green Cir, Greenwood Village, CO |
| Puckett Ambulance Service, Inc. | **Randel G. Owen** | **Michael Preissler** | **Thomas AA Cook** | 6363 S. Fiddler's Green Cir, Greenwood Village, CO |
| American Medical Response of Georgia, Inc. | **Randel G. Owen** | **Michael Preissler** | **Thomas AA Cook** | 6363 S. Fiddler's Green Cir, Greenwood Village, CO |

19.     Therefore, GMR, AMR, and the Subsidiaries have interrelated operations, common management, centralized control of labor relations, and common management and financial control.

20.     GMR, AMR, and the Subsidiaries are so integrated with respect to ownership and operations so as to constitute a single or integrated employer for purposes of the ADA.

21.     GMR, AMR, and the Subsidiaries are so integrated with respect to ownership and

operations so as to constitute a single or integrated employer for purposes of Title VII.

## ADMINISTRATIVE PROCEDURES

22.     More than thirty days prior to the institution of this lawsuit, Singh, Richard, Abramowitz, Glaspy, and Bryant filed a Charge of Discrimination with the EEOC or with a state or local agency with which the EEOC has a work sharing agreement alleging violations of Title VII by Defendants.

23.     More than thirty days prior to the institution of this lawsuit, Bryant, Allen, and Fequiere filed a Charge of Discrimination with the EEOC or with a state or local agency with which the EEOC has a work sharing agreement alleging violations of the ADA by Defendants.

24.     On February 23, 2022, the EEOC issued to Defendants Letters of Determination on the Charges of Discrimination filed by Singh, Richard, Abramowitz, Glaspy, and Bryant (the "Title VII Claimants") and on behalf of similarly situated applicants and employees (the "Title VII Class") finding reasonable cause to believe that Title VII had been violated and inviting Defendants to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

25.     On February 23, 2022, the EEOC issued to Defendants Letters of Determination on the Charges of Discrimination filed by Bryant, Allen, and Fequiere (the "ADA Claimants") and on behalf of similarly situated applicants and employees (the "ADA Class") finding reasonable cause to believe that the ADA had been violated and inviting Defendants to join with the EEOC in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

26.     Defendants declined to participate in conciliation.

27.     On March 8, 2022, the EEOC issued to Defendants a Notice of Failure of Conciliation advising Defendants that the EEOC was unable to secure from Defendants a conciliation agreement acceptable to the EEOC.

28.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

29.     Since at least December 2018, Defendants have engaged in unlawful employment practices in violation of Title VII and the ADA.

30.     The ADA Claimants and the ADA Class are qualified individuals with a disability under Sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8). The ADA Claimants have a physical impairment, Pseudofolliculitis Barbae ("PFB"), that substantially limits them in the operation of their major bodily functions, including, but not limited to, skin and immune function. The ADA Claimants' PFB also substantially limits them in the major life activities that include, but are not limited to, grooming and caring for themselves. Upon information and belief, the ADA Class have physical impairments that substantially limit a major bodily function and/or a major life activity and, therefore, are disabled under the ADA.

31.     The Title VII Claimants and the Title VII Class maintain sincerely held religious beliefs. Specifically, Singh is Sikh, Richard is Nordic Pagan, Abramowitz is Jewish, Glaspy is Baptist, and Bryant is Hebrew Israelite. The Title VII Claimants and the Title VII Class' sincerely held religious beliefs require that they maintain facial hair.

32.     Defendants provide emergency medical transportation services throughout the United States.

33.     Defendants employ, *inter alia*, EMTs and Paramedics.

34.     Certain regulations of the Occupational Safety and Health Administration ("OSHA") appear to require Defendants' EMTs and Paramedics to wear respirators when exposed to certain hazards.

35.     When a respirator is required by OSHA regulations, those regulations require Defendants to provide appropriate respirators to their EMTs and Paramedics.

36.     GMR and AMR have a policy that EMTs and Paramedics can use only tight-fitting respirators like N95 respirators (the "N95 Policy"). These types of respirators are also called negative pressure respirators. GMR and AMR require that the Subsidiaries follow the N95 Policy.

37.     Because under OSHA regulations tight-fitting respirators cannot be worn if there is facial hair between the seal and the user's skin, GMR created the No Facial Hair Policy. GMR and AMR require that the Subsidiaries follow the No Facial Hair Policy.

38.     GMR and AMR do not allow any exceptions to the N95 Policy and the No Facial Hair Policy (collectively, the "Policies") for medical or religious reasons, therefore, the Subsidiaries also do not allow any exceptions to the Policies.

39.     OSHA regulations do not require the Defendants to use negative pressure or tight-fitting respirators.

40.     OSHA regulations allow Defendants to use positive pressure respirators. One type of positive pressure respirator permitted by OSHA regulations is a powered air purifying respirator ("PAPR").

41.     PAPRs do not rely on a tight seal between the mask and the user's skin to work properly and provide protection to the user. For this reason, PAPRs can be safely worn by users

with facial hair, including full beards.

42.    The Policies do not permit the use of PAPRs. Therefore, applicants and employees who must maintain facial hair for medical or religious reasons are not hired by Defendants or are discharged by Defendants if they refuse to shave.

**ADA Class Claims**

43.    Upon information and belief, there is a class of applicants within the ADA Class who are disabled as defined by the ADA and whose disabilities are incompatible with the use of a tight-fitting respirator ("ADA Applicant Class"), which conflicts with the Policies.

44.    Upon information and belief, Defendants refused to hire the ADA Applicant Class because their disabilities prevented them from complying with the Policies.

45.    Upon information and belief, the ADA Applicant Class was qualified for the positions for which they applied.

46.    Upon information and belief, Defendants did not offer the ADA Applicant Class a reasonable accommodation.

47.    Providing the ADA Applicant Class with a PAPR to accommodate their disability is not an undue burden under the ADA.

48.    Defendants' failure to provide the ADA Applicant Class with a reasonable accommodation violates the ADA.

49.    Defendants' failure to hire the ADA Applicant Class because of their disabilities violates the ADA.

50.    Upon information and belief, there is a class of employees of Defendants within the ADA Class who are disabled as defined by the ADA and whose disabilities are incompatible

with the use of a tight-fitting respirator ("ADA Employee Class"), which conflicts with the Policies.

51.     Upon information and belief, some of the ADA Employee Class refused to shave their beards because of their disabilities so Defendants discharged them in violation of the ADA.

52.     Upon information and belief, some of the ADA Employee Class gave in to Defendants' demands and shaved their beards, which caused them to suffer pain, discomfort, and impaired their ability to care for themselves and groom themselves.

53.     Upon information and belief, the ADA Employee Class were qualified for the positions that they held.

54.     Upon information and belief, the ADA Employee Class requested reasonable accommodations for their disabilities.

55.     Upon information and belief, Defendants denied the accommodations requested by the ADA Employee Class.

56.     Upon information and belief, Defendants did not offer the ADA Employee Class a reasonable accommodation.

57.     Providing the ADA Employee Class with a PAPR to accommodate their disabilities is not an undue burden under the ADA.

58.     Defendants' failure to provide the ADA Employee Class with a reasonable accommodation violates the ADA.

59.     Defendants discharge of the ADA Employee Class because of their disabilities violates the ADA.

**Title VII Class Claims**

60.     Upon information and belief, there is a class of applicants within the Title VII Class whose bona fide religious beliefs required them to maintain facial hair ("Title VII Applicant Class"), which conflicts with the Policies.

61.     Upon information and belief, Defendants refused to hire the Title VII Applicant Class because their bona fide religious beliefs prevented them from complying with the Policies.

62.     Upon information and belief, Defendants did not offer the Title VII Applicant Class a reasonable accommodation.

63.     Providing the Title VII Applicant Class with a PAPR to accommodate their religious beliefs is not an undue burden under Title VII.

64.     Defendants' denial of accommodation and/or refusal to hire the Title VII Applicant Class because of their religion violates Title VII.

65.     Upon information and belief, there is a class of employees of Defendants within the Title VII Class whose bona fide religious beliefs required them to maintain facial hair ("Title VII Employee Class"), which conflicts with the Policies.

66.     Upon information and belief, some members of the Title VII Employee Class refused to shave their beards because of their bona fide religious beliefs so Defendants discharged them in violation of Title VII.

67.     Upon information and belief, some members of the Title VII Employee Class gave in to Defendants' demands and shaved their beards, which negatively altered the terms and conditions of their employment in violation of Title VII.

68.     Upon information and belief, Defendants did not offer the Title VII Employee

Class a reasonable accommodation.

69.     Providing the Title VII Employee Class with a PAPR to accommodate their religious beliefs is not an undue burden under Title VII.

70.     Defendants' denial of accommodation and/or discharge of the Title VII Employee Class because of their religion violates Title VII.

**Jamaal Bryant Facts:**

71.     In March 2019, Bryant began working as a Paramedic for Metro Ambulance Service, Inc. ("AMR Georgia"), one of the Subsidiaries.

72.     Bryant wears a beard, in part, because of his religion (Hebrew Israelite). Men in the Hebrew Israelite religion are required to wear a beard. Therefore, Bryant has a bona fide religious belief that requires him to wear a beard.

73.     Bryant also wears a beard because he suffers from a physical impairment: PFB. Bryant manages his PFB by maintaining a beard and not shaving.

74.     Bryant's PFB substantially limits, *inter alia*, the major life activities of the function of his immune system and the function of his skin.

75.     Bryant's PFB substantially limits, *inter alia*, the major life activities of his ability to care for himself and to groom himself.

76.     Therefore, Bryant's PFB is a disability under the ADA.

77.     Bryant was qualified for the position he held with AMR Georgia: Paramedic.

78.     When he was hired, Bryant informed AMR Georgia of his need for a religious accommodation and also requested an accommodation for his disability, and submitted documentation to support his request for accommodation.

79.     AMR Georgia initially granted the accommodation, but on or around October 22, 2019, Bryant received an email stating that there was an immediate change in policy, that facial hair would no longer be permitted, and that there were no exceptions.

80.     Later that day, Bryant was called into a meeting with several management officials and was again informed of the policy change and told in no uncertain terms that his continued employment was contingent on him shaving his beard.

81.     To keep his job, Bryant shaved his beard in violation of his bona fide religious beliefs, which also caused him to suffer pain and discomfort because of his PFB.

82.     Once Bryant started shaving, his face broke out, his wife had to pull ingrown hairs out, and he developed bumps that oozed pus. Bryant's co-workers noticed the bumps and pus and commented on it.

83.     Bryant continued to shave his beard in violation of his religious beliefs until he was discharged in June 2020 for reasons unrelated to his beard.

84.     Defendants did not offer Bryant a reasonable accommodation for his disability.

85.     Providing Bryant with a PAPR to accommodate his disability is not an undue burden to Defendants under the ADA.

86.     Defendants' failure to provide Bryant with a reasonable accommodation violates the ADA.

87.     Bryant's bona fide religious beliefs conflicted with the Policies.

88.     Defendants did not offer Bryant a reasonable accommodation for his bona fide religious beliefs under Title VII.

89.     Providing Bryant with a PAPR to accommodate his bona fide religious beliefs is

not an undue burden to Defendants under Title VII.

90.     Bryant capitulated to Defendants' demand that he shave his beard in violation of his bona fide religious beliefs, which negatively altered the terms and conditions of his employment in violation of Title VII.

91.     Defendants' failure to provide Bryant with a reasonable accommodation violates Title VII.

**<u>Derek E. Allen Facts:</u>**

92.     Allen wears a beard because he suffers from a physical impairment: PFB. Allen manages his PFB by maintaining a beard and not shaving.

93.     Allen's PFB substantially limits, *inter alia*, the major life activities of the function of his immune system and the function of his skin.

94.     Allen's PFB substantially limits, *inter alia*, the major life activities of his ability to care for himself and to groom himself.

95.     Therefore, Allen's PFB is a disability under the ADA.

96.     Allen was qualified for the position he held with AMR Georgia: Paramedic.

97.     On or about June 22, 2018, Allen submitted to AMR Georgia a completed Interactive Process Questionnaire and a doctor's note advising AMR Georgia that he suffers from PFB and requesting an accommodation of not shaving his beard. AMR Georgia granted this accommodation and allowed Allen to maintain a beard.

98.     However, on or about October 16, 2019, Allen met with several management officials and was told about the Policies. Allen was told that AMR Georgia no longer allowed beards and would not accommodate him under the ADA.

99.     In response, Allen requested that he be provided some other kind of personal protective equipment instead of an N95 to accommodate his disability. This request was denied.

100.     Rather than lose his job, Allen shaved his beard, which caused him to suffer pain and discomfort because of his PFB.

101.     Defendants did not offer Allen a reasonable accommodation for his disability.

102.     Providing Allen with a PAPR to accommodate his disability is not an undue burden to Defendants under the ADA.

103.     Defendants' failure to provide Allen with a reasonable accommodation violates the ADA.

**Jesus Fequiere Facts:**

104.     Fequiere wears a beard because he suffers from a physical impairment: PFB. Fequiere manages his PFB by maintaining a beard and not shaving.

105.     Fequiere's PFB substantially limits, *inter alia*, the major life activities of the function of his immune system and his skin.

106.     Fequiere's PFB substantially limits, *inter alia*, the major life activities of his ability to care for himself and to groom himself.

107.     Therefore, Fequiere's PFB is a disability under the ADA.

108.     Fequiere was qualified for the position he held with AMR Georgia: EMT.

109.     Fequiere was employed by American Medical Response of Connecticut ("AMR Connecticut"), one of the Subsidiaries.

110.     In December 2018, Fequiere was diagnosed with PFB and began to grow his beard out to treat his condition. Fequiere asked his doctor for a note for work.

111.    In December 2018, Fequiere provided the doctor's note to his union president, the head of Human Resources, and the Operations Supervisor. The note states that Fequiere has "severe pseudofolliculitis barbae of his beard and secondary to shaving and resulting in ingrown hairs. It is very painful and even unsightly. He should not shave but if according to your rule limit the amount of shaving to once a month."

112.    Beginning in January 2019, Fequiere worked while wearing a beard and received no update on his accommodation request until approximately June 2019.

113.    In June 2019, Fequiere met with the Regional Human Resources Manager and a union representative. Fequiere was told that his accommodation request was being processed.

114.    In December 2019, Fequiere was informed that he could no longer have a beard and work at AMR Connecticut and that his medical accommodation was rescinded.

115.    Fequiere was told that he needed to either be clean shaven or he could not work. Fequiere reported to work the same day and he was advised that he could no longer report to work with a beard because of safety issues.

116.    Fequiere responded by saying he was not able to be clean shaven due to his medical condition, and requested an accommodation of some other way to protect himself and suggested using a PAPR because it would allow Fequiere to maintain his beard, while also protecting him from any potential workplace hazards where a respirator is necessary.

117.    Defendants denied the request to use a PAPR. When Fequiere asked why, he was told "we don't supply PAPRs."

118.    Defendants' rejected the request by citing to the OSHA standard that does not permit any facial hair between the seal and the face when using a tight-fitting respirator, but did

not address Fequiere's request to use a PAPR as an accommodation.

119.    On December 28, 2019, Fequiere reported to work with a beard and he was placed on administrative leave. Fequiere was advised that if he did not report to work clean shaven, then he would be discharged.

120.    On January 22, 2020, the Regional Director for AMR wrote Fequiere and stated that "since December 27, 2019, you have chosen not to report to work in compliance with the Company shaving policy" and "you have repeatedly decided to show up for your regularly scheduled shifts out of compliance with the policy and you have been sent home with the instruction to shave and report back for work, which you have refused to do."

121.    AMR Connecticut then placed Fequiere on administrative leave and warned that if he did not report to work in compliance with the facial hair policy within seven days, he would be discharged. AMR Connecticut kept calling him back to work, but when Fequiere showed up with a beard, he was sent home. Eventually, AMR Connecticut discharged Fequiere.

122.    Defendants' failure to accommodate Fequiere violates the ADA.

123.    Defendants' discharged Fequiere because of his disability in violation of the ADA.

**Robert Glaspy Facts:**

124.    Glaspy began working for AMR Connecticut in May 2018 as an EMT. His final position was Paramedic.

125.    Glaspy was employed by AMR Connecticut on a part-time basis.

126.    Glaspy is a practicing Baptist and wears a beard in accordance with his religion and his bona fide religious beliefs.

127.    In late 2018, AMR Connecticut announced that it changed its policy and would no longer allow its employees to wear beards.

128.    Glaspy emailed the Operations Supervisor at AMR Connecticut and a person in Human Resources and requested a religious accommodation for his beard and for appropriate personal protective equipment that would accommodate his facial hair.

129.    On January 28, 2019, Human Resources informed Glaspy that his accommodation request was denied. As a result, Glaspy had to "book off" a shift. Human Resources told Glaspy that "in this industry, you need to be clean shaven."

130.    In February 2019, Glaspy had an encounter with an Operations Supervisor over his accommodation request. Glaspy asked the Operations Supervisor if he was being sent home because of his beard. The Operations Supervisor responded that he could not have a beard and be sent on the road and that if Glaspy did not shave he could not let Glaspy work. Glaspy responded that the Operations Supervisor did not respect Glaspy's religion.

131.    Glaspy requested to use a PAPR as an accommodation for his bona fide religious beliefs. AMR Connecticut denied this request and did not offer him any accommodation for his religious beliefs.

132.    Because Glaspy was denied an accommodation for his facial hair, he was unable to work.

133.    Glaspy's bona fide religious beliefs conflicted with the Policies.

134.    Defendants could have provided a reasonable accommodation to Glaspy by providing him with a PAPR.

135.    The provision of a PAPR is not an undue burden to Defendants.

136.   Defendants failed to accommodate Glaspy's bona fide religious beliefs in violation of Title VII.

137.   In July 2019, Defendants discharged Glaspy because of his religion in violation of Title VII.

138.   Glaspy engaged in protected activity when, *inter alia*, he requested an accommodation under Title VII, when he objected to the denial of his religious accommodation, and when he accused the Operations Supervisor of not respecting his religion.

139.   Defendants discharged Glaspy in retaliation for engaging in activity protected by Title VII.

**Menachem Abramowitz Facts:**

140.   Abramowitz is an Orthodox Jew and wears a beard in accordance with his bona fide religious beliefs.

141.   On or about March 4, 2020, Abramowitz applied for a position with AMR Connecticut.

142.   When Abramowitz arrived for his interview, before he even sat down, representatives of AMR Connecticut asked him if he wore his beard for religious reasons, to which he responded, "Yes".

143.   AMR Connecticut told Abramowitz that he could not be hired because of his beard.

144.   Abramowitz asked AMR Connecticut about using a PAPR as an accommodation for his religiously required beard, and offered to pay for it himself.

145.   AMR Connecticut told Abramowitz that his beard violated the Policies.

146.   AMR Connecticut then attempted to steer Abramowitz to other emergency transport companies and refused to hire him.

147.   Abramowitz's bona fide religious beliefs conflicted with the Policies.

148.   Defendants could have provided a reasonable accommodation to Abramowitz by providing him with a PAPR.

149.   The provision of a PAPR is not an undue burden to Defendants.

150.   Defendants failed to accommodate Abramowitz's bona fide religious beliefs in violation of Title VII.

151.   Defendants refused to hire Abramowitz because of his religion in violation of Title VII.

**Ravinder Singh Facts:**

152.   Singh is an observant member of the Sikh faith and wears a turban and maintains unshorn hair, including unshorn facial hair, consistent with his bona fide religious beliefs.

153.   In October 2020, Singh applied for a job with AMR Connecticut.

154.   On or about November 2, 2020, AMR Connecticut offered Singh a job as an EMT Basic, which he accepted.

155.   On or about November 9, 2020, AMR Connecticut told Singh that all new employees must be fit tested for an N95 respirator and that he must be clean shaven for the fit test. AMR Connecticut's Administrative Operations Supervisor told Singh that he cannot wear an N95 respirator with a beard because of the fit test, and asked Singh to provide more information about his beard.

156.   Singh provided AMR Connecticut with additional information on the Sikh faith.

Singh also requested a religious accommodation to use a PAPR in place of an N95 respirator.

157.    On or about November 17, 2020, AMR Connecticut denied Singh's request for a religious accommodation and told Singh he would be separated from employment.

158.    In early December 2020, Singh's counsel communicated with AMR Connecticut to reiterate the request to be accommodated, but that request was also denied.

159.    On or about December 9, 2020, Singh received a letter from GMR's Director of Risk and Safety, in which Defendants denied the religious accommodation request, but addressed only the inability to accommodate the use of an N95 respirator and did not address the request to use a PAPR.

160.    Singh has a bona fide religious belief that requires that he not shave his beard.

161.    Singh's bona fide religious belief conflicts with the Policies.

162.    A PAPR is a reasonable accommodation for Singh's bona fide religious beliefs.

163.    Providing a PAPR is not an undue hardship to Defendants.

164.    Defendants' failure to accommodate Singh's bona fide religious beliefs violates Title VII.

165.    Defendants' discharged Singh because of his religion in violation of Title VII.

**James E. Richard Facts:**

166.    Richard is Nordic Pagan and wears a beard consistent with his bona fide religious beliefs.

167.    Richard began working for AMR Tennessee in June 2019 as an EMT. Nothing was said about his beard during his job interview or when he first started work, and he was not required to pass a respirator fit test.

168.    In or around September 2019, Richard was approached by his supervisor and informed that he needed to shave his beard because of the Policies.

169.    On September 18, 2019, Richard submitted a request for a religious accommodation to be exempt from shaving his beard. Richard included in that request a description of the importance of beards to the Nordic Pagan religion.

170.    On October 8, 2019, Richard received a letter denying his request for an accommodation citing OSHA regulations. Richard told AMR Tennessee that he would be willing to use another kind of respirator, but this request was also denied.

171.    Richard was told he could not work with a beard and he had to either shave or not work.

172.    Richard refused to shave his religiously required beard.

173.    On October 15, 2019, Richard was discharged because he refused to shave his beard.

174.    Richard has a bona fide religious belief that requires that he not shave his beard.

175.    Richard's bona fide religious belief conflicts with the Policies.

176.    A PAPR is a reasonable accommodation for Richard's bona fide religious beliefs.

177.    Providing a PAPR is not an undue hardship to Defendants.

178.    Richard engaged in protected activity when, *inter alia*, he requested an accommodation under Title VII.

179.    Defendants discharged Richard in retaliation for engaging in activity protected Title VII.

180.    Defendants' failure to accommodate Richard's bona fide religious beliefs violates

Title VII.

181.    Defendants discharged Richard because of his religion in violation of Title VII.

182.    The effect of the practices complained of above have been to deprive the Title VII Claimants and the Title VII Class of equal employment opportunities and otherwise adversely affect their status as applicants and employees because of their religion.

183.    The unlawful employment practices complained of above were intentional.

184.    The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the Title VII Claimants and the Title VII Class.

185.    The effect of the practices complained of above have been to deprive the ADA Claimants and the ADA Class of equal employment opportunities and otherwise adversely affect their status as applicants and employees because of their disability.

186.    The unlawful employment practices complained of above were intentional.

187.    The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of the ADA Claimants and the ADA Class.

## **PRAYER FOR RELIEF**

WHEREFORE, the EEOC respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendants, their officers, successors, assigns and all other persons in active concert or participation with it, from discriminating against its applicants and employees on the basis of their religion and/or their disabilities, by denying them reasonable accommodations, not hiring them, subjecting them to different terms

and conditions of employment, discharging them and/or subjecting them to retaliation for engaging in protected activity.

B.      Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for applicants and employees who need an accommodation for their sincerely held religious beliefs and practices and their disabilities, and which eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendant to make the ADA Claimants, the ADA Class, the Title VII Claimants, and the Title VII Class whole by providing appropriate back pay with pre-judgment interest, in an amount to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.      Order Defendant to make the ADA Claimants, the ADA Class, the Title VII Claimants, and the Title VII Class whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in an amount to be determined at trial.

E.      Order Defendant to make the ADA Claimants, the ADA Class, the Title VII Claimants, and the Title VII Class whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain and suffering, loss of enjoyment of life, inconvenience, anxiety, stress, and humiliation, in amounts to be determined at trial.

F.      Order Defendant to pay punitive damages to the ADA Claimants, the ADA Class, the Title VII Claimants, and the Title VII Class for Defendants' malicious and/or reckless conduct described above, in an amount to be determined at trial.

G.      Grant such further relief as the Court deems necessary and proper in the public

interest.

H.      Award the EEOC its costs in this action.

## **<u>JURY TRIAL DEMAND</u>**

The EEOC requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

GWENDOLYN Y. REAMS
Acting General Counsel

MARCUS G. KEEGAN
Regional Attorney

LAKISHA DUCKETT ZIMBABWE
Assistant Regional Attorney

*/s/Steven A. Wagner*
Steven A. Wagner
Trial Attorney
Georgia Bar No. 000529
steven.wagner@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
(470) 531-4838 (direct)
(404) 562-6905 (facsimile)