**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:22-cv-02544-DDD-SBP

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION and RAVINDER SINGH, as Intervenor,

Plaintiffs,

v.

GLOBAL MEDICAL RESPONSE, INC., et al,

Defendants.

---

# ORDER GRANTING PARTIAL MOTION TO DISMISS

---

This case was originally brought by the Equal Employment Opportunity Commission. Plaintiff Ravinder Singh intervened. In his amended complaint, he alleges that his employer and 134 related parent and subsidiary organizations, all of whom he names as defendants, engaged in discriminatory employment practices. 132 of those defendants now move to dismiss his claims against them, arguing that Mr. Singh was never their employee and thus has no standing or factual basis to sue them.[1]

## BACKGROUND

The defendants in this case are a conglomerate of medical service companies. At the top of this conglomerate is Global Medical Response, Inc. (GMR), which owns American Medical Response, Inc. (AMR). Doc. 63 6–7. AMR in turn owns a plethora of subsidiary holding companies

[1] The Motion to Dismiss addresses only Mr. Singh's Amended Complaint as Intervenor (Doc. 63). It does not seek to dismiss the claims under the Amended Complaint filed by the EEOC (Doc. 60).

and operating companies servicing specific regions or geographic areas across the United States. *Id.* at 7–9. There is significant overlap in the operations, leadership, and policies of all the defendants. *Id.* at 8–10.

Mr. Singh, along with six other Emergency Medical Technicians who were employed subsidiary defendants, filed a complaint with the EEOC. They alleged that the defendants discriminated against them on the basis of religion and disability under Title VII, 42 U.S.C. § 1981, and Title VI, by enforcing a zero-tolerance facial-hair policy. The policy is dictated by GMR and enforced by the subsidiaries. Doc. 63 at 7. The subsidiaries have no authority to alter or deviate from the policy. *Id.* The policy applies to EMTs and is meant to ensure a tight fit and proper usage of N95 facemasks. *Id.* at 11–12. But some EMTs, like Mr. Singh, have religious obligations to remain unshaven.[2] Others are unable to shave without considerable pain and discomfort due to skin or immune system conditions.

EEOC brought this suit against all defendants for discriminatory hiring, firing, and promotion policies. Alone among the original complainants, Mr. Singh intervened. He argues that by refusing to grant him a religious exception to the policy and firing him, the defendants violated the non-discrimination provisions of Title VII. *Id.* at 6. Mr. Singh was directly employed by American Medical Response of Connecticut, Inc., but brings claims against all 135 defendants in this case. *Id.* All defendants, save for AMR Connecticut and its parent companies AMR and GMR, have moved to dismiss his claims against them. Doc. 68.

---

[2] Mr. Singh is "an observant member of the Sikh religion, and wears identifiable Sikh articles of faith including maintaining unshorn hair (including facial hair) and a turban." *Id.* at 6.

## DISCUSSION

### I. Legal Standard

When presented with a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a district court must decide whether the facts alleged in the complaint, if true, would entitle the claimant to some legal remedy. *See Conley v. Gibson*, 355 U.S. 41, 45–46 (1957), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The court must accept the alleged facts as true and view them in the light most favorable to the claimant. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). But the court need not accept as true conclusory allegations that are unsupported by factual averments. *VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1159 (10th Cir. 2021). To survive a motion to dismiss, a complaint must contain sufficient factual allegations that, accepted as true, allow the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court typically must not look outside the pleadings when deciding a Rule 12(b)(6) motion, but is permitted to consider documents that a complaint incorporates by reference, documents referred to in a complaint if they are central to the claims and their authenticity is undisputed, and facts of which a court may take judicial notice. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

### II. Subsidiary Defendants

The merits of Mr. Singh's discrimination claims are not at issue here. Instead, the defendants move for dismissal on the grounds that they are neither parents nor subsidiaries of Mr. Singh's direct employer, and that he has no claim against them.

Common sense and statutory language dictate that only a person's "employer" may be liable for employment discrimination under Title VII. *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1069 (10th Cir. 1998). Mr. Singh may only bring a claim against an employer by whom he was actually employed. True, there are limited circumstances in which an employer and its parent corporation will be considered an "integrated enterprise" and may be treated as a common employer. *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1362 (10th Cir. 1993) (there is "a strong presumption that a parent company is not the employer of its subsidiary's employees, and the courts have found otherwise only in extraordinary circumstances").[3]

But even in those limited circumstances, an integrated enterprise combines a subsidiary with its parent corporation, but it does not merge a subsidiary with another subsidiary of the same parent corporation. *See id.* ("The interrelated nature of the three subsidiaries is, however, irrelevant to the interrelation of operations inquiry."); *Evans v. McDonald's Corp.*, 936 F.3d 1087 (10th Cir. 1991) (considering only interrelation of parent and subsidiary operations); *McKenzie v. Davenport–Harris Funeral Home,* 834 F.2d 930, 933–34 (11th Cir. 1987) (same); *Baker v. Stuart Broadcasting Co.,* 560 F.2d 389, 392 (8th Cir. 1977) (same); *Perry v. Manocherian,* 675 F.Supp. 1417 (S.D.N.Y. 1987) (same); *EEOC v. Financial Assurance, Inc.,* 624 F.Supp. 686 (W.D.Mo. 1985) (same); *Smith v. Jones Warehouse, Inc.,* 590 F.Supp. 1206 (N.D.Ill. 1984) (same).

While an integrated enterprise may allow a plaintiff to look through his direct employer and up the chain of ownership, there is no precedent (or reason) allowing him to reverse direction and go back down another

[3] The test for an integrated enterprise considers four factors: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* (citing *Evans v. McDonald's Corp.*, 939 F.2d 1087, 1089 (10th Cir. 1991)).

chain of ownership to reach a sibling subsidiary. The fact that Mr. Singh's employer in Connecticut implemented the same policy as another subsidiary in, say, Texas, does not extend his claim, or his injury, to the Texas subsidiary. While Mr. Singh tries to argue that the integrated enterprise test theoretically applies to both parents and other subsidiaries, he fails to present a single case in which liability was imputed to "sibling" subsidiaries in the way he seeks.[4] Plaintiff simply has not alleged facts that could support a claim against the 132 subsidiary organizations which did not employ him.

## CONCLUSION

It is ORDERED that:

The Amended Motion to Dismiss (Doc. 68) is **GRANTED**; and the claims against the Defendants listed in Doc. 68-1 are **DISMISSED WITH PREJUDICE.**

DATED: December 8, 2023

BY THE COURT:

Daniel D. Domenico
United States District Judge

[4] Because Mr. Singh has no claim against the moving defendants, I need not, and therefore do not, reach the alternative exhaustion argument presented in the Motion to Dismiss.