IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-02544-DDD-SBP

Equal Employment Opportunity Commission,

    Plaintiff,

Ravinder Singh,

    Plaintiff/Intervenor, and

Inder Dhanota,

    Plaintiff/Intervenor.

v.

Global Medical Response, Inc., *et al.*,

    Defendants.

---

### MOTION TO COMPEL DISCOVERY
---

    COMES NOW, Plaintiff Equal Employment Opportunity Commission (the "EEOC"), and pursuant to Rule 37(a)(3)(B), Federal Rules of Civil Procedure, and D.C.Colo.L.Civ.R. 37.1, files this Motion to Compel Discovery (the "Motion"), and shows the Court as follows:

**I.    PROCEDURAL HISTORY.**

    On September 29, 2022, the EEOC filed the Complaint in this action. [Doc. No. 1]. On March 27, 2023, the EEOC filed its Amended Complaint. [Doc. No. 60]. The EEOC named as defendants Global

1

Medical Response, Inc. ("GMR"), American Medical Response, Inc. ("AMR"), and numerous subsidiaries of GMR and AMR (the "Subsidiaries"). The EEOC alleged that GMR, AMR, and the Subsidiaries are an integrated enterprise. [Doc. No. 60, ¶¶ 5-21]. While admitting some operational connections between GMR, AMR, and the Subsidiaries, Defendants largely denied these allegations and specifically denied that they are an integrated enterprise. [Doc. No. 66, ¶¶ 5-21]. Therefore, the EEOC was forced to conduct discovery on this issue via interrogatories and document requests. Pursuant to D.C.Colo.L.Civ.R. 37.1, the relevant interrogatories and document requests (the "Discovery Requests"), and Defendants' responses thereto, are attached hereto as Exhibit "A".

II.     **LEGAL ARGUMENT AND CITATION OF AUTHORITIES.**

The purpose of the Discovery Requests is to obtain evidence to prove the EEOC's legal theory that the Defendants are an integrated enterprise to: (1) establish the required number of employees under Title VII and the ADA for jurisdictional purposes; (2) establish the number of employees for purposes of applying the correct cap on compensatory and punitive damages that applies under both Title VII and the ADA; and (3) fully effectuate the injunctive relief of a policy change sought by the EEOC so that the policy change applies to the parent companies that set the employment policies for all of the Subsidiaries.

    A.     <u>The Discovery Requests are Necessary for Establishing Jurisdiction.</u>

Title VII and the ADA apply, *inter alia*, to "employers", which are defined as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year . . .." 42 U.S.C. § 2000e(b); 42 U.S.C. § 12111(5)(A). The EEOC alleges that the Subsidiaries employ 15 or more employees. [Doc. No. 60, at ¶ 9]. Defendants denied this allegation. [Doc. No. 66, at ¶ 9]. Therefore, the EEOC must conduct discovery as to

the number of employees employed by each Subsidiary to determine if they employ 15 or more employees and, if not, as Defendants contend, the EEOC needs to conduct discovery as to whether the Subsidiaries and their parent companies, GMR and AMR, are an integrated enterprise for purposes of counting the number of employees. See Dunn v. Tutera Grp., 181 F.R.D. 653, 660 (D. Kan. 1998) (Defendant claimed it was not an employer because it did not have 15 employees, but court noted that if both defendants together are an integrated enterprise, the aggregate number of employees can be used to satisfy the definition of employer.).

      B.      The Discovery Requests are Necessary for Determining Any Applicable Cap on Damages.

Both Title VII and the ADA have statutory monetary caps on certain compensatory and punitive damages. See 42 U.S.C. § 1981a(b)(3). These caps increase as the number of employees employed by the relevant employers increases, with the largest damages cap applying to employers with more than 500 employees. Id. A party is entitled to conduct discovery to obtain evidence of an integrated enterprise to aggregate employees for purposes of establishing the proper damages cap. See E.E.O.C. v. Roark-Whitten Hosp. 2, LP, No. 1:14-CV-00884-MCA-LF, 2017 WL 3575731, at *5 (D.N.M. Aug. 17, 2017) (citation omitted); see also E.E.O.C. v. Columbine Health Sys., Inc., No. 15-CV-01597-MSK-CBS, 2017 WL 4163354, at *5 (D. Colo. Sept. 19, 2017) (Noting that integrated enterprise "determination is relevant to the amount of punitive damages that might be imposed", but declining to rule on issue at summary judgment.).

      C.      The Discovery Requests are Necessary to Determine the Scope of Injunctive Relief.

"The EEOC represents the public interest when litigating claims, and, through injunctive relief, seeks to protect not only the rights of the individual claimant, but those of similarly-situated employees by deterring the employer from future discrimination." E.E.O.C. v. Massey Yardley Chrysler Plymouth, Inc., 117 F.3d 1244, 1253 (11th Cir. 1997) (citation omitted). This includes seeking injunctive relief against an

integrated enterprise so that the relief will be effective. See, e.g., E.E.O.C. v. Bell Gas Inc., No. CV 02-1212 BB/LAM, 2004 WL 7337767, at *10 (D.N.M. July 20, 2004) (Recognizing that the EEOC is entitled to obtain injunctive relief to protect current and future employees of integrated companies.).

The EEOC seeks injunctive relief of, *inter alia*, a change in Defendants' policy that does not allow religious or disability accommodations for facial hair for its EMTs and Paramedics. In their Answer, "Defendants admit the policies and procedures for complying with AMR's and the Subsidiaries' obligations under the ADA and Title VII are set at a corporate level." [Doc. No. 66, ¶ 12]. Therefore, obtaining a change in corporate policy requires that any injunctive relief be imposed on GMR and AMR, not just on the Subsidiaries. One way to accomplish this is to establish that GMR, AMR, and the Subsidiaries are an integrated enterprise, which means they are or were the "employer" of the aggrieved individuals under Title VII and the ADA. See, e.g., Bell Gas Inc., 2004 WL 7337767, at *10.

        D.        The Court Should Compel Responses to the Discovery Requests.

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: . . . (iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to produce documents . . . as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B). A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defenses and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Defendants have not objected to any of the Discovery Requests based on a privilege. See Exh. "A".

        (1)        **Objections to Providing Confidential or Proprietary Information.**

Defendants object to some of the Discovery Requests because they contend that the information sought is confidential and/or proprietary. See Exh. "A", Interrogatory Responses 24-25, Document Request

Responses 24, 25, and 30. The Court entered a protective order in this case to keep confidential any such information or documents and prevent their disclosure while also allowing them to be used in the case. [Doc. No. 73]. Therefore, this objection has no merit and is not a basis to withhold relevant evidence. See E.E.O.C. v. Moreland Auto Grp., No. 11-cv-01512-RBJ-MJW, 2012 U.S. Dist. LEXIS 84421, at *8–9 (D. Colo. June 19, 2012) (granting EEOC's motions to compel responses to requests related to an employer's status as an integrated enterprise over privacy objections in part because a protective order that "adequately protect[ed] the privacy interests of the parties" had been entered.)

**(2)    Objections Based on Temporal Scope.**

Defendants also object to some of the Discovery Requests and claim that they are not limited to time or scope. See Exh. "A", Document Request Responses 24, 25, and 31. But the instructions in the EEOC's Request for Production of Documents state that "the relevant time period for all information sought, unless specifically stated otherwise in the particular request, shall be from January 1, 2018, to date of trial of this action." See Exh. "B", p. 6. In other responses, Defendants object to providing five years of information, implicitly conceding that there is temporal scope. See Exh. "A", Interrogatory Responses 24-25, Document Request Response 24. There is a temporal limit stated explicitly in all the EEOC's requests, January 1, 2018, through the date of trial, that aligns with the dates during which the aggrieved or potential aggrieved individuals worked for Defendants, so that is the time period in which the EEOC must show that the Defendants were an integrated enterprise. Limiting responses to, e.g., 2022 or 2023, does not permit the EEOC to prove that the Defendants were an integrated enterprise in 2020, 2021, or any other year.

**(3)    Objections Based on Relevancy and Proportionality.**

The rest of Defendants' objections relate to whether the Discovery Requests are relevant to a claim

or defense in the case and whether they are proportional. As an initial matter, because Defendants have not provided any response to the interrogatories and produced no documents in response to the document requests (other than its EPLI policy), Defendants have taken the position that not a single piece of information or a single document requested by the EEOC is relevant, proportional, or not over broad. That is just not the case. Defendants could have produced what they contend are not over broad or proportional, but instead they take the remarkable position that the EEOC gets nothing.

Because Title VII is a remedial statute, courts have used the "single employer" or "integrated enterprise" test to give a broad interpretation of the definition of "employer". See Lockard v. Pizza Hut, Inc., 162 F.3d 1062, 1079 (10th Cir. 1998). This test is also used in cases brought under the ADA. See Florez v. Holly Corp., 154 F. App'x 707, 708 (10th Cir. 2005). Courts applying the "single employer" or "integrated enterprise" test generally weigh four factors: "(1) interrelations of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control." Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek, 312 F.3d 1213, 1220 (10th Cir. 2002) (citations omitted).

Defendants admit that (1) GMR, AMR, and the Subsidiaries have common ownership, (2) the policies and procedures for complying with AMR's and the Subsidiaries' obligations under the ADA and Title VII are set at a corporate level, (3) GMR's and AMR's management were involved to some extent in some of the accommodation decisions at issue in this case, (4) there are some operational connections between GMR, AMR, and the Subsidiaries, and (5) GMR, AMR, and the Subsidiaries share common officers, yet they continue to deny that they are an integrated enterprise. [Doc. No. 66, ¶¶ 11, 12, 14, 15, and 17-21]. Therefore, the EEOC must continue to marshal evidence to prove its legal theory, but Defendants'

refusal to respond to the Discovery Requests prevents the EEOC from obtaining much of this evidence.[1]

The evidence the EEOC is seeking in the Discovery Requests is the type the Tenth Circuit has held can be used to prove that Defendants are an "integrated enterprise". The EEOC is seeking evidence related to the Defendants' bank accounts and flow of money between Defendants, Defendants' insurance policies and who provides and pays for them for the Subsidiaries, payment of mortgages and rents for the real property used by Defendants in conducting their operations, and websites used by Defendants and who controls them. See Calvert v. Midwest Restoration Servs., Inc., 35 F. App'x 798, 802 (10th Cir. 2002) (Court looked at whether defendants had "separate payroll accounts, separate insurance policies, and separate bank accounts"); see also E.E.O.C. v. 704 HTL Operating, LLC, No. 1:11-CV-845-JCH/LFG, 2013 WL 5273219, at *5 (D.N.M. Aug. 16, 2013) ("Evidence supporting a finding of interrelated operations between a parent and subsidiary has been found to include a showing of . . . (3) combined accounting records; (4) combined bank accounts; (5) combined lines of credit; (6) combined payroll preparation; . . . and (9) shared services or equipment."). "A plaintiff alleging that multiple entities are an integrated enterprise should be accorded a full and fair opportunity to develop his case under this theory." Roark-Whitten Hosp., 2017 WL 3575731, at *5 (quotation omitted). And this information cannot simply be obtained through depositions because the EEOC needs actual documents to use as exhibits.

---

[1] The EEOC is not sitting idly by, however, and served subpoenas on Defendants' insurers for information about which corporate entity obtains and pays for insurance for the Defendants. Defendants have informed the EEOC that they will move to quash those subpoenas, again trying to prevent the EEOC from obtaining relevant and discoverable information and documents. While the EEOC will attempt to obtain evidence from third-party sources, it is much more efficient for Defendants to simply provide responses to the EEOC's properly sought Discovery Requests.

Examining each of the Discovery Requests individually demonstrates their relevancy:

**Interrogatory Number 24:** This interrogatory asks Defendants to identify information related to the physical locations from which the Subsidiaries operate, such as who pays the rent or owns the real property. If GMR or AMR own or lease the real property out of which the Subsidiaries operate and make the mortgage or lease payments, that is relevant to show interrelation of operations and financial control, which are elements of the integrated enterprise test. See Ray v. Core Carrier Corp., No. 20-CV-02448-JAR-TJJ, 2021 WL 1196444, at *6 (D. Kan. Mar. 30, 2021) (Possible evidence of integrated enterprise includes evidence that parent paid subsidiary's bills).

**Interrogatory Number 25:** This interrogatory asks Defendants to identify the names of the financial institutions and account numbers for bank accounts owned by Defendants. If Defendants share bank accounts, that is evidence in support of a finding of an integrated enterprise. See Tatum v. Everhart, 954 F. Supp. 225, 228 (D. Kan. 1997). The flow of money between the various Defendants is relevant to show interrelation of operations and financial control, which are elements of the integrated enterprise test. The account information will allow the EEOC to subpoena bank records showing the movement of money between the Defendants. EEOC is also seeking credit card accounts and merchant service accounts so that the EEOC can determine if customers of the Subsidiaries pay the Subsidiaries or pay GMR or AMR and, if so, where that money goes next, e.g., does it stay with the Subsidiaries or go to GMR or AMR. See Roark-Whitten Hosp., 2017 WL 3575731, at *5 ("The financial documents sought by the EEOC, including financial statements, profit-and-loss statements, tax returns, annual reports, insurance policies and

information submitted to lending institutions—for all four hotels—could demonstrate whether they have interrelated operations, and whether they are under common management and financial control.")

The EEOC has no intention of serving a subpoena on any financial institution that seeks documents beyond what is needed to prove an integrated enterprise.

**Interrogatory Number 27:** This interrogatory seeks information related to who provides insurance for the Subsidiaries. This information will allow the EEOC to serve subpoenas to the insurance providers to obtain the documents necessary to learn, *inter alia*, who purchases insurance for the Subsidiaries, who the beneficiaries of those policies are, and who pays the premiums for those policies. Defendants referenced a bates number range in their response, but that document is simply an organizational chart. Again, this information is relevant to show the interrelatedness of operations between GMR, AMR, and the Subsidiaries. See Calvert, 35 F. App'x at 802 (Court looked at whether defendants had "separate insurance policies"); see also Roark-Whitten Hosp., 2017 WL 3575731, at *5 ("The financial documents sought by the EEOC, including . . . insurance policies . . . could demonstrate whether they have interrelated operations, and whether they are under common management and financial control.") The EEOC has already served subpoenas on what it believes is Defendants' insurance broker and some of the insurance carriers its uses, but there could be others and only Defendants have this knowledge.

**Document Request Number 24:** This request, like Interrogatory number 25, seeks bank records showing the flow of money among and between the Defendants. Again, the EEOC contends that the Defendants operate as an integrated enterprise and the flow of money between

the various Defendants is relevant to this issue to show interrelatedness of operations and control by the parent companies over the Subsidiaries. If all money that comes into a Subsidiary is then transferred to GMR and/or AMR, that is evidence of an integrated enterprise. See Roark-Whitten Hosp., 2017 WL 3575731, at *5 ("The financial documents sought by the EEOC, including financial statements, profit-and-loss statements, tax returns, annual reports, insurance policies and information submitted to lending institutions—for all four hotels—could demonstrate whether they have interrelated operations, and whether they are under common management and financial control.")

**Document Request Number 25:** This request, like Interrogatory number 24, seeks documents related to the physical locations from which the Subsidiaries operate and who pays the rent or owns the real property. If GMR or AMR owns or leases the real property out of which the Subsidiaries operate, that fact along with who makes the mortgage or rent payments on behalf of the Subsidiary is relevant to whether there is an interrelation of operations between Defendants. See Core Carrier Corp., 2021 WL 1196444, at *6 (Possible evidence of integrated enterprise includes evidence that parent paid subsidiary's bills).

**Document Request Number 30:** This request seeks documents related to insurance provided to the Defendants and the identity of the entity or entities that pay for or provide this insurance. Defendants limited their response to the EPLI policy that potentially provides coverage for the claims in this case. That information is required to be produced under the rules as part of the Defendants' initial disclosures, but it is not what is being sought in this request. Who provided insurance (all kinds of insurance) to the Defendants and who pays for it, is relevant to the question

of whether there is an interrelation of operations between Defendants and financial control by GMR and AMR over the Subsidiaries, which are elements of the integrated enterprise test. See Calvert, 35 F. App'x at 802 (Court looked at whether defendants had "separate insurance policies"); see also Roark-Whitten Hosp., 2017 WL 3575731, at *5 ("The financial documents sought by the EEOC, including . . . insurance policies . . . could demonstrate whether they have interrelated operations, and whether they are under common management and financial control.") The fact that workers' compensation insurance or automobile insurance is not implicated as basis for indemnification against the EEOC's claims is not a basis for withholding the evidence when it is sought to prove an integrated enterprise.

**Document Request Number 31:** In this request, the EEOC seeks documents showing who owns and operates any websites related to Defendants. The EEOC clarified for the Defendants that it is not asking for websites that Defendants may use such as third-party sites they access for news or weather. By "used" the EEOC means use for the operation of their business. The EEOC is aware of www.amr.net and www.gmr.net. The EEOC is trying to determine who owns and operates these websites and any other similar websites that the EEOC does not know about. For example, if there is a www.amrconnecticut.net website used by American Medical Response of Connecticut, Inc., for conducting its business, the EEOC is entitled to know who owns and maintains the website because it is relevant to the issue of interrelation of operations. See Eichenwald v. Krigel's, Inc., 908 F. Supp. 1531, 1559 (D. Kan. 1995) (Common advertising scheme was one piece of evidence supporting court's finding of integrated enterprise); see also

704 HTL Operating, 2013 WL 5273219, at *5 (Court lists "shared services or equipment" as possible evidence of an integrated enterprise).

In addition, Defendants claim that website information is a public record and that the EEOC can capture ownership records of GMR's and AMR's websites "through URL and domain searches". When the EEOC looked up the known websites for GMR and AMR on whois.com, however, it says the registrant is "Brandsight Privacy Customer 235391" and the registrar is Godaddy.com. Therefore, this information is not publicly available.

The Discovery Requests are also proportional to the needs of the case. Proportionality is determined by "considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Defendants refusing to provide the information and documents requested, which are in their possession, has compelled the EEOC to begin serving subpoenas to obtain information Defendants could easily produce. And by not providing information in response to Interrogatories 24, 25, and 27, the EEOC cannot know on which other entities to serve the necessary subpoenas. "Inherent in any proportionality analysis is the expectation that litigants will use the available discovery tools in an efficient and cost-effective manner." Witt v. GC Servs. Ltd. P'ship, 307 F.R.D. 554, 570 (D. Colo. 2014). The EEOC is using the Discovery Requests to efficiently obtain the necessary information and documents. Without Defendants' responses, the burden and expense of obtaining the information and documents increases in both money and time.

Also weighing in favor of proportionality is that the establishment of an integrated enterprise is of

Case No. 1:22-cv-02544-DDD-SBP   Document 116   filed 07/16/24   USDC Colorado
pg 13 of 14

vital importance to the claims in the case, including establishing jurisdiction and obtaining the policy change to protect the public interest going forward. The EEOC cannot obtain all this information simply through third parties because it does not even know where to send some of the subpoenas, so it has to come from Defendants. And as discussed above, compelling Defendants to provide the information is the more efficient method of obtaining the evidence that the EEOC has a right to obtain to prove its claims.

### III. CONCLUSION

Defendants deny they are an integrated enterprise, so the EEOC is compelled to obtain evidence to prove that they are. The Discovery Requests are narrowly tailored to obtain this information. If the Court finds that they are not, it has the authority to narrow them appropriately while ensuring that the EEOC obtains the necessary discovery. The EEOC respectfully requests that the Court grant the Motion to Compel and direct Defendants to provide the information and documents responsive to the Discovery Requests.

Respectfully submitted, this 16th day of July, 2024.

/s/Steven A. Wagner
Steven A. Wagner
100 Alabama St. SW, Suite 4R30
Atlanta, GA 30303
Tel: (470) 531-4838
Email: steven.wagner@eeoc.gov

Attorney for Plaintiff EEOC

### CERTIFICATE OF CONFERRAL

Pursuant to D.C.Colo.L.Civ.R. 7.1(a), and Federal Rule of Civil Procedure 37(a)(1), counsel for the EEOC certifies that prior to filing this motion it made good faith efforts to confer with other counsel in the case to obtain responses to the Discovery Requests but could not obtain the responses or resolve the dispute.

**CERTIFICATE OF SERVICE**

I hereby certify that on July 16, 2024, a true and correct copy of the foregoing pleading was filed with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to all counsel of record.